UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DOREEN PHILLIPS on behalf of K.D.W.,[1] | ) CASE NO. 1:11CV2412 ) ) |
| Plaintiff, | ) MAGISTRATE JUDGE ) GEORGE J. LIMBERT |
| v. | ) ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF OF SOCIAL SECURITY, | ) ) **MEMORANDUM OPINION** ) **AND ORDER** ) |
| Defendant. | ) |

Doreen Phillips ("Plaintiff"), acting on behalf of K.D.W., a minor ("Claimant"), seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying Claimant's Supplemental Security Income ("SSI") claim. ECF Dkt. #1.  Plaintiff asserts that Claimant's Attention Deficit Hyperactivity Disorder ("ADHD"), asthma, and sleep apnea cause marked impairment of at least two domains, which results in functional equivalency and disability.  ECF Dkt. #14.  For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice:

I.  **PROCEDURAL HISTORY**

On May 5, 2008, Plaintiff, acting on behalf of Claimant, filed an application for child's SSI, alleging disability due to ADHD, asthma, and sleep apnea, as of June 14, 2000.  ECF Dkt. 11 at 177.[2]  The application was denied initially and on reconsideration.  *Id*. at 118-119.  On August 14, 2009, Plaintiff filed a request for a hearing by an ALJ.  *Id*. at 129-131.

---

[1] *See* L.R. 8.1(a)(2).

[2] Page numbers refer to "Page ID" numbers in the electronic filing system.

On November 16, 2010, an ALJ conducted an administrative hearing, *via* videoconference, where Plaintiff and Claimant appeared and were represented by counsel. *Id.* at 80-117.  At the hearing, the ALJ accepted testimony from Claimant and Plaintiff.  *Id.*  On December 10, 2010, the ALJ issued a Notice of Decision - Unfavorable. *Id.* at 58-78.  On September 13, 2011, the Appeals Council denied Plaintiff's request for review.  *Id*. at 53.

On November 8, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On April 28, 2012, Plaintiff filed a brief on the merits.  ECF Dkt. #14.  On June 12, 2012, Defendant filed a brief on the merits.  ECF Dkt. #15. No reply brief was filed.

**II**.    **STEPS TO DETERMINE WHETHER CHILD IS ENTITLED TO SSI**

In order to qualify for childhood SSI benefits, a claimant must show that he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906.  An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood SSI.  20 C.F.R. § 416.924(a).  The three-step procedure requires the ALJ to determine whether a child:

> (1) is performing substantial gainful activity;
>
> (2) has a "severe" impairment or combination of impairments; and
>
> (3) whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing");

20 C.F.R. § 416.924(a)-(d).  In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925(d)(emphasis added).  In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment.  20 C.F.R. § 416.926(a) (emphasis added).  In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or

an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a)(emphasis added). The Commissioner assesses all relevant factors, including:

> (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings;
>
> (2) how the child functions in school; and
>
> (3) how the child is affected by his medications or other treatment.

20 C.F.R. § 416.926a(a)(1)- (3). Further, in considering whether a child's impairment functionally equals the Listings, the Commissioner begins by evaluating how a child functions on a daily basis and in all settings as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b).

The Commissioner considers how a child's functioning is affected during his activities at home, school and in his community in terms of six domains:

> (i) acquiring and using information;
>
> (ii) attending and completing tasks;
>
> (iii) interacting and relating with others;
>
> (iv) moving about and manipulating objects;
>
> (v) caring for yourself; and,
>
> (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Lengthy definitions for "marked" and "extreme" are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. See § 416.926a(e)(2)(i). "Extreme" limitation is the rating for the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. See 20 C.F.R § 416.926a(e) (3)(I).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id.*

If the child's impairment meets, medically equals, or functionally equals the Listing, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### IV. RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Claimant was a school-age child, was not engaged in substantial gainful activity, and that she had the severe impairment of asthma, sleep apnea, and ADHD. *Id.* at 64. He further found that Claimant's severe impairment, individually or in combination with other

impairments, did not meet or medically equal any of those in the Listings. *Id*. The ALJ specifically considered Listings 103.03 (Asthma) and 112.11 (ADHD). The ALJ then determined that Claimant's impairments, individually or in combination, did not functionally equal the Listings. *Id*. at 64. Based upon his findings, the ALJ concluded that Claimant was not disabled and therefore not entitled to childhood SSI. *Id.* at 74.

## V. ANALYSIS

Claimant was born prematurely in 2000, weighing three pounds and seven ounces, with a positive toxicity screen confirming prenatal exposure to alcohol and crack cocaine. *Id*. at 230. Claimant's lungs were not fully developed at birth, she has used an inhaler and undergone multiple steroid treatments since infancy for asthma and allergic rhinitis. *Id*. at 344-366, 381-398. In 2007, Plaintiff, who is Claimant's grandmother and has been her guardian since she was born, sought treatment for Claimant's behavior problems, poor academic performance at school, and sleeping problems. Claimant was diagnosed with possible sleep apnea, although she was never treated for the problem. *Id*. at 471.

On February 1, 2008, an Individualized Education Program ("IEP") was implemented for Claimant, which found that she was entitled to special education services due to a specific learning disability. *Id*. at 353-370. Although Claimant was in the second grade, she was performing at a first grade level in math and vocabulary. Claimant's behavior was disruptive at home and in class, and Claimant was prone to fight with her classmates. She was unable to concentrate. *Id*. at 254. One teacher indicated that she kept Claimant separate from the other students, because she often cheated on tests with little concern for being caught. *Id*. at 231. Claimant's second grade report card contained failing grades in writing, reading, and math, and "D"s in science, social studies, and Spanish. *Id*. at 213.

On March 20, 2008, Claimant began seeing a child therapist, Charles Byrd, LISW. *Id*. at 451-455. After reviewing Claimant's school record, Mr. Byrd concluded that Claimant suffered from ADHD. Claimant began taking Concerta to treat the symptoms of her ADHD in May of 2008. Claimant's IEP was renewed in 2010. *Id*. at 494-505. At that time, Claimant was spending more than half of the school day in mainstream classes. The IEP indicated that Claimant was well liked

-5-

by both her teachers and peers. *Id*. at 495. Although her academic skills were still below average, they had significantly improved over the course of the previous year. The IEP team determined that extended school year services were not necessary. *Id*. at 502.

Plaintiff asserts that Claimant's severe impairments cause marked limitations of at least two domains, which results in functional equivalency and disability. As a matter of initial concern, the ALJ found that Claimant's asthma is well-controlled and she receives no treatment for her sleep apnea. *Id.* at 66. Plaintiff does not appear to challenge these findings, choosing instead to predicate her appeal on the limitations caused by Claimant's ADHD.

The burden of proof at step three rests with the claimant. *Franklin ex rel. L.F. v. Comm'r of Soc. Sec.*, No. 4:10CV2215, 2012 WL 727799, at *1 (N.D. Ohio Feb. 16, 2012), citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The ALJ must "nevertheless provide articulation of step three findings that will permit meaningful review of those findings." *Franklin*, citing *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006) and *Hunter v. Comm'r of Soc. Sec.*, No. 1:09CV2790, 2011 WL 6440762, at *3-4 (N.D. Ohio Dec. 20, 2011). "As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion." *Hernandez ex rel. L.A. v. Astrue*, No. 1:10CV1295, 2011 WL 4899960, at *6, citing *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm'r of Soc.* Sec., 378 F.3d 541, 544-546 (6th Cir. 2004).

In his step three functional equivalence section, the ALJ separately analyzed each of the six domains, citing the pertinent regulations and evidence in the record to support his conclusions with respect to each domain. In this appeal, Plaintiff contends that there is substantial evidence to support the conclusion that Claimant has a marked limitation in three domains. However, this Court's standard of review is limited to determining whether there is substantial evidence supporting the ALJ's Decision. The ALJ's decision "must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

Plaintiff first challenges the ALJ's findings with respect to Claimant's ability to attend and complete tasks. The appropriate functioning of a child between the ages of six and twelve in the domain of attending and completing tasks is described as follows:

> [The child] should be able to focus [his or her] attention in a variety of situations in order to follow directions, remember and organize [his or her] school materials, and complete classroom and homework assignments. [The child] should be able to concentrate on details and not make careless mistakes in [his or her] work (beyond that would be expected in other children [of the same] age who do not have impairments). [The child] should be able to change [his or her] activities or routines without distracting [him or herself] or others, and stay on task and in place when appropriate. [The child] should be able to sustain [his or her] attention well enough to participate in group sports, read by [him or herself], and complete family chores. [The child] should also be able to complete a transition task ( e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). The ALJ concluded that Claimant had a less than marked limitation in this domain. Plaintiff contends that the ALJ erred in reaching this conclusion, based upon a childhood disability evaluation form completed by John Mormol, M.D. and Mel Zwissler, Ph.D. in July of 2008. Drs. Mormol and Zwissler conclude that Claimant has a marked limitation in attending and completing tasks, writing, "Teacher reports difficulty with concentration and focus, follow directions [sic], and completing tasks. [Claimant] has dx of ADHD but is not receiving medication. Mom reports [Claimant] has problems with focusing and concentrating for extended times. Tutor reports difficulty in paying attention for extended periods. School records show difficulty following directions and completing work. Ts notes she will begin meds in 5/08." ECF Dkt. #11 at 427.

In her brief, Plaintiff relies for the most part on evidence that pre-dates Claimant's use of medication to control her ADHD. Claimant was first prescribed Concerta in May of 2008. Medical records from October 8, 2008 reveal that Claimant was "doing better [with] Concerta." *Id.* at 460. At the hearing, Plaintiff stated that Claimant was taking Concerta, *Id.* at 101, and that she completes her homework every evening with some oversight. *Id.* at 99.

Moreover, in a consultative examination performed by David V.House, Ph.D, on June 2, 2009, Dr. House concluded that Claimant's concentration and attention did not appear to be limited. *Id.* at 480. Dr. House writes, "She apparently had her medication the day of the examination. She

-7-

did not seem restless, tolerated frustration broadly adequately [sic] and appropriately responded to redirection." *Id.* Likewise, state agency physicians, Silvia Vasquez, M.D. and Bonnie Katz, Ph.D., found that Claimant had less than marked limitation in attending and completing tasks when she takes her medication, and that her ability to concentrate, maintain pace and complete tasks is two-thirds age appropriate. *Id.* at 484. Accordingly, there is substantial evidence in the record to support the ALJ's conclusion that, although Claimant has more difficulty with concentration than her peers, she does not have a marked limitation in attending and completing tasks when she takes her medication.

Next, Plaintiff asserts that the ALJ incorrectly concluded that Claimant had a less than marked limitation in acquiring and using information. Under the domain of Acquiring and Using Information, the ALJ must consider the child's ability to learn information and to think about and use the information. 20 C.F.R. § 416.926a(g). A child must "be able to use language to think about the world and to understand others and express [himself]; e.g., to follow directions, ask for information, or explain something." 20 C.F.R. § 416.926a(g)(1)(ii). School records provide important information in assessing limitations in the domain of Acquiring and Using Information. SSR 09–3p.

"Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain provided they result from a medically determinable mental or physical impairment(s)." *Id.* School records may reveal that mental or physical impairments interfere with the child's ability to acquire and use information by showing the child receives:

> • Special education services, such as assignment of a personal aide who helps the child with classroom activities in a regular classroom, remedial or compensatory teaching methods for academic subjects, or placement in a self-contained classroom.
>
> • Related services to help the child benefit from special education, such as occupational, physical, or speech/language therapy, or psychological and counseling services.
>
> • Other accommodations made for the child's impairment(s), both inside and outside the classroom, such as front-row seating in the classroom, more time to take tests, having tests read to the student, or after-school tutoring.
>
> The kind, level, and frequency of special education, related services, or other accommodations a child receives can provide helpful information about the severity of the child's impairment(s).

SSR 09–3p.

All of the agency physicians concluded that Claimant did not have a marked limitation in acquiring and using information. Plaintiff cites Claimant's educational testing during her second grade year to demonstrate marked impairment. However, as stated previously, Claimant's educational testing scores showed considerable improvement after Claimant began taking Concerta.

Claimant's most recent IEP indicates that, although Claimant was not performing at her grade level, she had made "strong" gains with respect to reading based upon previous tests. *Id.* at 495. Claimant's reading comprehension was at a grade equivalent of 3.0, a significant improvement from the previous year's score of 1.2, and she was performing simple fourth grade mathematics. *Id.* Claimant received "A"s in Spanish and Music and "C"s in English and Health. *Id.* at 493. Accordingly, there is substantial evidence in the record to support the ALJ's conclusion that Claimant she does not have a marked limitation in acquiring and using information.

Finally, Plaintiff contends that Claimant is markedly limited in her ability to interact and relate with others. The regulations describe the appropriate functioning of a child between the ages of six and twelve in the domain of interacting and relating with others as follows:

> [The child] should be able to develop more lasting friendships with children who are [his or her] age. [The child] should begin to understand how to work in groups to create projects and solve problems. [The child] should have an increasing ability to understand another's point of view and to tolerate differences. [The child] should be well able to talk to people of all ages, to share ideas, to tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

Plaintiff testified that Claimant did not like her fifth grade teachers and that she was suspended for three days for fighting with classmates. *Id.* at 88-90. However, Plaintiff further testified that Claimant plays with her neighbor, a girl who is approximately the same age as Claimant, *Id.* at 96, and that Claimant "minds" Plaintiff, as well as Claimant's aunt and uncle. *Id.* at 107. Moreover, the ALJ relied upon several comments in the record regarding Claimant's demeanor and ability to make friends at school. For instance, according to her 2008 IEP, Claimant was "popular in class and had many friends." *Id.* at 71. According to her 2010 IEP, Claimant is

"well-liked by both her teachers and her peers." *Id.* at 71. Furthermore, the medical record is replete with references to her good behavior with various counselors and teachers. *Id.*

### VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.

DATE: June 29, 2012            */s/George J. Limbert*
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE